IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| **KENDRICK HUTTON,** | ) | |
| | ) | |
| **Movant,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 3:24-cv-00115** |
| | ) | **Judge Aleta A. Trauger** |
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Respondent.** | ) | |

**MEMORANDUM**

Before the court are movant Kendrick Hutton's Motion for Equitable Tolling of Limitations Period 28 U.S.C. § 2255(f) and construed motion to vacate or correct sentence ("Section 2255 Motion") under 28 U.S.C. § 2255. (Doc. No. 1.) For the reasons set forth herein, the court finds that equitable tolling is not warranted and that, even if it were, the movant is not entitled to relief under § 2255. Both motions, therefore, will be denied, and the court declines to issue a certificate of appealability.

## I. PROCEDURAL BACKGROUND

### A. Underlying Criminal Proceedings

Hutton was indicted in federal court in July 2019 on drug- and weapons-related charges. Indictment, *United States v. Hutton*, No. 3:19-cr-00171-1 (M.D. Tenn. July 3, 2019), ECF No. 1.[1] The Superseding Indictment, filed on December 11, 2019, charged Hutton with three offenses: possessing with intent to distribute hydrocodone, cocaine, and marijuana, in violation of 21 U.S.C.

[1] References to the underlying criminal case record will hereafter be designated as "Crim. Doc. No. __."

§ 841(a)(1); being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1); and possessing a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A). (Crim. Doc. No. 17 at 1–2.) Hutton eventually entered a Plea Agreement with the government in which he agreed to plead guilty to all three offenses under Federal Rule of Criminal Procedure 11(c)(1)(C) in exchange for the government's agreement that, if the court accepted the agreement, he would receive a below-guidelines term of 188 months of incarceration for all counts, to be followed by three years of supervised release. (Plea Agreement, Crim. Doc. No. 63 at 7.)

As set forth in the Plea Agreement, Hutton was apprehended by Metropolitan Nashville Police Officers on January 31, 2019, while trying to flee from a traffic stop, and found to be carrying a backpack and a grocery bag containing a substantial quantity of oxycodone pills, cocaine, and marijuana, as well as $810 in U.S. currency and a handgun with a loaded magazine. (*Id.* at 5.) On April 8, 2019, an agent with the Bureau of Alcohol, Tobacco, Firearms & Explosives conclusively determined that the firearm had previously crossed a state line and, as such, had traveled in and affected interstate commerce. (*Id.*) As the Plea Agreement also states, Hutton had previously been convicted of more than one felony, including convictions for (1) Possession of Cocaine with the intent to distribute, a Class B felony, on October 8, 2002, for which he was sentenced to eight years in state prison; (2) Possession of Marijuana in an amount not less than one-half ounce nor more than ten pounds, a Class E felony, on May 23, 2005, for which he was sentenced to six years in state prison; and (3) Possession of Cocaine in an amount of less than one-half gram, a Class C felony, on May 23, 2005, for which he was sentenced to six years in state prison. (*Id.* at 5–6.)

Testing by the TBI Crime Laboratory confirmed that the drugs seized during Hutton's arrest were in fact the kind of drugs named in the Superseding Indictment. (*Id.* at 6; Crim. Doc.

No. 17 at 1.) Hutton stipulated through the Plea Agreement that the drug amounts contained in the Superseding Indictment were accurate. (Crim. Doc. No. 63 at 6.) Hutton also admitted that he possessed a firearm after having been convicted of a crime punishable by imprisonment exceeding one year, that he was aware of his status as a felon at the time of the possession, that the firearm crossed a state line prior to his possession of the firearm, that he intended to distribute the drugs listed in the Superseding Indictment, and that he possessed the firearm in furtherance of a drug trafficking crime. (*Id.*)

Hutton's sentencing guideline range, as calculated by the Probation Office and accepted by the court, was 262 to 327 months' imprisonment. (Sentencing Tr., Crim. Doc. No. 92 at 2–3.) Hutton did not object to the Presentence Report prepared by the Probation Office. (Crim. Doc. No. 74.) However, he submitted a Sentencing Memorandum expressly stating that the agreed-upon sentence of 188 months "would satisfy the intent and requirements of 18 U.S.C. § 3553(a) fully" and requesting that the court accept the agreed-upon sentence (Crim. Doc. No. 75 at 3). At the sentencing hearing, the court found the agreed-upon sentence to be sufficient but not greater than necessary to comply with the purposes of § 3553(a). (Crim. Doc. No. 92 at 9–13.) The court therefore accepted the Plea Agreement and sentenced Hutton accordingly. (*Id.* at 12.) Judgment was entered on February 3, 2022. (Crim. Doc. No. 84.) The defendant did not appeal.

The Plea Agreement accepted by the court contained an appellate waiver, which stated in pertinent part:

> Regarding the issue of guilt, defendant hereby waives all (i) rights to appeal any issue bearing on the determination of whether he is guilty of the crime(s) to which he is agreeing to plead guilty; and (ii) trial rights that might have been available if he exercised his right to go to trial. Regarding sentencing, the Defendant is aware that 18 U.S.C. § 3742 generally affords a defendant the right to appeal the sentence imposed. Acknowledging this, the Defendant knowingly waives the right to appeal any sentence that includes a term of 188 months of incarceration and 3 years of supervised release. The Defendant further waives all appellate rights and all

> collateral attacks concerning forfeiture and all matters related thereto. The Defendant also knowingly waives the right to challenge the sentence imposed in any motion pursuant to 18 U.S.C. § 3582(c) and in any collateral attack, including, but not limited to, a motion brought pursuant to 28 U.S.C. § 2255 and/or § 2241. *However, no waiver of the right to appeal, or to challenge the adjudication of guilt or the sentence imposed in any collateral attack, shall apply to a claim of involuntariness, prosecutorial misconduct, or ineffective assistance of counsel.* Likewise, the United States waives the right to appeal any sentence that includes 188 months of incarceration and 3 years of supervised release.

(Crim. Doc. No. 63 at 10 (emphasis added).)

In February 2021, almost a year prior to the court's acceptance of the Plea Agreement, Hutton appeared for a change of plea hearing. (Change of Plea Tr., Crim. Doc. 98.) The court began by confirming that Hutton understood the charges against him in the Superseding Indictment, that he had had the opportunity to tell his lawyer everything he knew about the facts that supported the charges and to discuss with him any possible defenses, and that he was satisfied with his counsel's representation. (*Id.* at 3–4.) The court explained to Hutton the maximum penalties possible for each crime charged and the rights he would be waiving by entering a guilty plea. (*Id.* at 4–7.) The court also informed Hutton of the elements of each crime that the government would have to prove to a jury beyond a reasonable doubt and confirmed that he thought the government could do so. (*Id.* at 15–17.) Hutton confirmed that he understood the effect of pleading guilty, had read and understood both the Petition to Enter a Plea of Guilty and the Plea Agreement, was agreeing to plead guilty because he was in fact guilty of the offenses charged in the Superseding Indictment, and understood that he would receive a sentence of 188 months if the court accepted the Plea Agreement. (*Id.* at 7–8, 15–17.) The court also reviewed with Hutton the waiver of his appellate rights set forth in the Plea Agreement, including the waiver of his right to appeal any sentence that included the 188-month agreed-upon sentence and his right to challenge the sentence or any forfeiture order through a collateral attack. (*Id.* at 9–10.) The court expressly noted that the waivers did not apply to claims that the plea was involuntary, that defense counsel

had rendered ineffective assistance of counsel, or that the government had engaged in prosecutorial misconduct. (*Id.* at 10.)

At the February 2022 sentencing hearing, conducted after the court and the parties had received the Presentence Report from the Probation Office, Hutton took the opportunity to speak in court, and he apologized and took full responsibility for his actions. (Crim. Doc. No. 92 at 7.) The court, in reviewing his criminal history, noted that he was 35 years old but had "started getting in trouble as a young teen." (*Id.* at 10.) He had two serious felony convictions when he was 16 and 18 years old and a third when he was 29. (*Id.*) The court expressly recognized as a mitigating factor the fact that he had committed two of the felonies making him a career offender under the sentencing guidelines when he was a teenager. (*Id.* at 11–12.) For these and other reasons, the court accepted the Plea Agreement and sentenced Hutton to 188 months, well under the recommended sentencing guidelines range of 262–327 months, to be followed by three years of supervised release. (*Id.* at 3, 12.) The court also notified Hutton that, to the extent he had retained any right to appeal in the Plea Agreement, such appeal must be filed within 14 days. (*Id.* at 14.) Judgment was entered on February 3, 2022. (Crim. Doc. No. 84.) When Hutton elected not to appeal, the judgment became final on February 17, 2022.

**B. Post-Judgment Motions**

Just over a year later, on February 16, 2023,[2] Hutton filed a *pro se* Motion for an Enlargement of Time to File a Motion to Vacate Sentence 28 USC § 2255 in his criminal case, expressly recognizing that a one-year statute of limitations ordinarily pertained to § 2255 motions. (Crim. Doc. No. 93 at 1.) In July 2023, he filed both a Verified Motion to Permit this Court to

[2] The motion was docketed on February 24, 2023, but the movant's Certificate of Service was dated February 16, 2023.

Withdraw His Guilty Plea in Equity (Crim. Doc. No. 95) and a motion for a status report on his Motion for Enlargement of Time ("supplemental motion"), which also sought to supplement the earlier Motion for Enlargement of Time (Crim. Doc. No. 96). The court entered a Memorandum and Order addressing all three motions on September 23, 2023 ("September 2023 Order"). (Crim. Doc. No. 97.)

Regarding the Motion for Enlargement and the supplemental motion, the September 2023 Order specifically informed the movant that the court lacked jurisdiction to grant the requested extension of the deadline because the Motion for Enlargement was not accompanied by a § 2255 motion. (*Id.* at 2–3.) The court also found that it lacked the discretion to construe the Motion for Enlargement or supplemental motion as a § 2255 motion because neither specified any potential grounds for relief under § 2255 or stated any facts supporting a § 2255 motion. (*Id.* at 4.) Regarding the Motion to Withdraw, the September 2023 Order informed Hutton that, because he had already been sentenced, the court lacked authority to entertain a motion to withdraw the plea. (*Id.* at 3.) The court also declined to construe the Motion to Withdraw as a § 2255 motion, because Hutton expressly rejected reliance on § 2255, indicating a clear intent that the motion not serve as a § 2255 motion. (*Id.* at 5.) However, the court also directed the Clerk to mail Hutton a blank form for motions under 28 U.S.C. § 2255, while expressing "no opinion on the procedural or substantive viability of any Section 2255 motion the defendant may file, including whether any such motion would be timely or subject to equitable tolling." (*Id.* at 5–6.)

### C. The Present Motions

On January 17, 2024,[3] the plaintiff initiated this action by filing his Motion for Equitable Tolling, accompanied by his Section 2255 Motion. The latter raises claims of ineffective assistance

[3] The motion was docketed on February 1, 2024.

of counsel in connection with Hutton's Petition to Enter Plea of Guilty, Plea Agreement, and resulting sentence imposed upon him in the underlying criminal case. The Section 2255 Motion is supported by a Brief (Doc. No. 2) and Hutton's Declaration (Doc. No. 3). The government filed a Response, arguing both that Hutton is not entitled to relief under § 2255 and that his motion is untimely under § 2255(f) and not subject to equitable tolling. (Doc. No. 11.) The movant filed an "Objection," or reply, to the government's Response (Doc. No. 17) and, with the court's permission, a notice of supplemental authority (Doc. No. 21).

## II. STANDARD OF REVIEW

### A. Equitable Tolling

The Antiterrorism and Effective Death Penalty Act of 1966 ("AEDPA") imposes a one-year statute of limitations on federal prisoners filing Section 2255 motions. *See* 28 U.S.C. § 2255(f). The limitations period runs from the latest of

> (1) the date on which the judgment of conviction becomes final;
>
> (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;
>
> (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

*Id.*

The statute of limitations, however, is not jurisdictional and may be tolled under extraordinary circumstances. *Dunlap v. United States*, 250 F.3d 101, 1007 (6th Cir. 2001). Equitable tolling is used sparingly, and a movant bears the burden of establishing that equitable tolling applies to his case. *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005); *Allen v. Yukins*, 366

F.3d 396, 401 (6th Cir. 2004); *Jurado v. Burt*, 337 F.3d 638, 642 (6th Cir. 2003). To demonstrate that equitable tolling is warranted, a movant must show: "(1) that he has been pursuing [his] rights diligently, and (2) that some extraordinary circumstance stood in [his] way and prevented timely filing." *Holland v. Florida*, 560 U.S. 631, 649 (2010) (quoting *Pace*, 544 U.S. at 418); *Hall v. Warden*, 662 F.3d 745, 750 (6th Cir. 2011); *see also Jurado*, 337 F.3d at 643 ("Absent compelling equitable considerations, a court should not extend limitations by even a single day."). Only reasonable diligence is required to qualify for equitable tolling of § 2255(f)'s one-year statute of limitation, not the maximum feasible diligence. *Holland*, 560 U.S. at 653. Whether equitable tolling is warranted is a fact-intensive inquiry. *Id.* at 654.

**B. Section 2255**

Section 2255 provides that a prisoner serving a sentence for violation of a federal criminal law who claims that his sentence was imposed in violation of the Constitution "may move the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. § 2255(a). In order to obtain relief under § 2255, a petitioner "'must demonstrate the existence of an error of constitutional magnitude which had a substantial and injurious effect or influence on the guilty plea or the jury's verdict.'" *Humphress v. United States*, 398 F.3d 855, 858 (6th Cir. 2005) (quoting *Griffin v. United States*, 330 F.3d 733, 736 (6th Cir. 2003)).

Claims of ineffective assistance of counsel are cognizable under § 2255. *Gilbert v. United States*, 64 F.4th 763, 770 (6th Cir. 2023) (citing *Massaro v. United States*, 538 U.S. 500, 504, 508–09 (2003)). And "the Sixth Amendment's requirement that defendants receive the effective assistance of competent counsel extends to all critical stages of a criminal proceeding, including plea negotiations." *Id.* (quoting *Byrd v. Skipper*, 940 F.3d 248, 255 (6th Cir. 2019) (internal quotation marks omitted)).

To establish the ineffective assistance of counsel, a defendant generally must show both

deficient performance and prejudice resulting from that deficiency. *Knowles v. Mirzayance*, 556 U.S. 111, 122 (2009); *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Gilbert*, 64 F.4th at 771. To establish deficient performance, the defendant must "show that counsel's representation fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688. To do so, he "must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Id.* at 690. To prove prejudice, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

Although defendants have no constitutional right to a plea offer, it is well established that, once the government chooses to enter into plea negotiations, defendants are entitled to the effective assistance of counsel in "navigating that crucial process." *Gilbert*, 64 F.4th at 771 (quoting *Rodriguez-Penton v. United States*, 905 F.3d 481, 489 (6th Cir. 2018)). This includes providing "accurate advice regarding sentence exposure." *Id.*; *see also Smith v. United States*, 348 F.3d 545, 553 (6th Cir. 2003) ("[I]n the context of the modern criminal justice system, which is driven largely by the Sentencing Guidelines, more [than merely conveying a plea offer] is required. A criminal defendant has a right to expect at least that his attorney will review the charges with him by explaining the elements necessary for the government to secure a conviction, discuss the evidence as it bears on those elements, and explain the sentencing exposure the defendant will face as a consequence of exercising each of the options available.).

Generally speaking, in the context of a plea agreement, "prejudice may lie where a petitioner demonstrates that counsel's deficient performance infected his decisionmaking process, and thus undermine[d] confidence in the outcome of the plea process." *Rodriguez-Penton*, 905 F.3d at 488. "A defendant is not limited to showing he would have gone to trial but for the bad

advice during the plea process." *Gilbert*, 64 F.4th at 771 (citing *Rodriguez-Penton*, 905 F.3d at 487–88). "He 'may demonstrate prejudice if he can show that, had he known about the risk of adverse . . . consequences, he would have bargained for a more favorable plea.'" *Id.* (quoting *Rodriguez-Penton*, 905 F.3d at 488).

## III. WHEN A HEARING IS REQUIRED

A prisoner who files a motion under § 2255 challenging a federal conviction is generally entitled to "a prompt hearing," at which the district court is to "determine the issues and make findings of fact and conclusions of law with respect thereto." 28 U.S.C. § 2255. The hearing is mandatory, "unless 'the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief.'" *Fontaine v. United States*, 411 U.S. 213, 215 (1973) (quoting 28 U.S.C. § 2255(b)). "If the record includes a factual dispute, the district court must hold a hearing to determine the truth of the [movant's] claims." *Ross v. United States*, 339 F.3d 483, 490 (6th Cir. 2003) (quotation marks and citation omitted). However, "no hearing is required if the petitioner's allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact." *Valentine v. United States*, 488 F.3d 325, 333 (6th Cir. 2007) (quoting *Arredondo v. United States*, 178 F.3d 778, 782 (6th Cir. 1999)).

## IV. DISCUSSION

### A. Equitable Tolling Motion

In this case, although the movant makes some vague references to post-judgment changes in the law, he has not alleged post-judgment changes that would affect him and that were made retroactively available on collateral review. Accordingly, the limitations period is clearly governed by subsection (f)(1).

Judgment in Hutton's case was entered on February 3, 2022. Because he did not appeal, the judgment became final fourteen days later, on February, 17, 2022.[4] *See* Fed. R. App. P. 4(b)(1) (providing defendants in criminal cases fourteen days to file notice of appeal); *Sanchez-Castellano v. United States*, 358 F.3d 424, 427 (6th Cir. 2004) ("[W]hen a federal criminal defendant does not appeal to the court of appeals, the judgment becomes final upon the expiration of the period in which the defendant could have appealed to the court of appeals, even when no notice of appeal was filed.").

Under § 2255(f), Hutton's Section 2255 Motion is untimely, as he concedes, and he acknowledges the applicable equitable tolling standard in his Motion for Equitable Tolling. (*See* Doc. No. 1 at 2–3.) He argues that the statute of limitations should be equitably tolled because "the basis for [his] claim was not discoverable at the ratification of the plea agreement." (Doc. No. 1 at 1.) He argues that a "petitioner can establish diligence by showing that he took prompt action . . . as soon as he was in a position to realize that he had an interest in challenging his conviction." (*Id.* at 3 (citing *Johnson v. United States*, 544 U.S. 295, 308 (2005)).) He asserts that, after his conviction became final on February 16, 2022, the Supreme Court issued a ruling indicating that convicted felons may retain Second Amendment rights (*id.* at 4 (citing *New York State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1 (June 23, 2022)), and, after that, the United States District Court for the Southern District of Mississippi and the Third Circuit have both held that "convicted felons" may be among "the people" protected by the Second Amendment. (*Id.* (citing *United States v. Bullock*, 679 F. Supp. 3d 501 (S.D. Miss. 2023), and *Range v. Att'y Gen. United States of Am.*, 69

---

[4] The government incorrectly asserts that the Judgment was entered on February 23, 202**1**. (Doc. No. 11 at 19 (citing Crim. Doc. No. 98, the transcript for the movant's change of plea hearing).) As set forth above, the sentencing took place on February 2, 202**2**, and judgment was entered on February 3, 2022. (Crim. Doc. No. 84.)

F.4th 96 (3d Cir. 2023)).)[5] He further claims that his waiver of collateral challenges to his sentence was not knowing and intelligent, because he was not aware that legal standards could subsequently be modified and that ineffective assistance of counsel justifies the equitable tolling of the statute of limitations.

The problem with Hutton's equitable tolling motion is that it effectively argues the merits of his § 2255 Motion instead of establishing grounds for equitable tolling—the diligent pursuit of his rights and extraordinary circumstances standing in the way of timely filing. Hutton was clearly aware when he filed his Motion for Enlargement in his criminal case that the deadline for filing a § 2255 motion was February 16, 2023—the date on which the Motion for Enlargement was filed. His post-judgment motions filed in July 2023 also show that he believed then that his plea was not knowing and voluntary and that he had received the ineffective assistance of counsel. (*See, e.g.*, Crim. Doc. No. 95 at 2 (claiming he was "extremely prejudiced because of the patent ineffective assistance of his own counsel, which has lead to [the] plea agreement" and that counsel "appears to have patently failed to read and understand the 'terms of the plea agreement well, thereby also has patently failed to advise and 'caution' the defendant Hutton"); Crim Doc. No. 96 at 2 (explaining that, while incarcerated, he was "able to find out there were . . . several matters related to the ineffective assistance of counsel" that he sought to raise in a § 2255 motion).) Although the court did not deny the post-judgment motions until September 2023 (Crim. Doc. No. 97), Hutton waited more than four months after that before filing the present motion. The Sixth Circuit and the Supreme Court have both found that five months' delay does not reflect a diligent pursuit of one's rights. *See, e.g.*, *Blain v. United States*, 766 F. App'x 327, 330–31 (6th Cir. 2019) ("Although Blain may have been diligent in his attempts to contact trial counsel and the district court in

---

[5] As discussed below, these cases do not support Hutton's claim for relief.

obtaining what he deemed 'necessary documents,' upon receipt of that information he waited more than five months to file his § 2255 motion. In these circumstances, Blain cannot be said to have diligently pursued his rights."); *Kendrick v. Rapelje*, 504 F. App'x 485, 487 (6th Cir. 2012) ("[F]ive months elapsed between the decision in *Holland* [*v. Florida*] and the filing of Kendrick's petition, a delay which the Supreme Court found constituted a lack of diligence in *Pace v. DiGuglielmo*, 544 U.S. 408, 419 (2005)).”). This court likewise finds that waiting four months after the denial of his Motion for Enlargement to file the Section 2255 Motion, under the circumstances here, reflects a lack of diligence, particularly given that Hutton had, by then, been aware of potential claims for more than a year.

Aside from the lack of diligence, Hutton does not point to any extraordinary circumstances that prevented timely filing. The applicable standard requires the movant to show that his failure to file within the limitations period "unavoidably arose from circumstances beyond that litigant's control.'" *Robinson v. Easterling*, 424 F. App'x 439, 442 (6th Cir. 2011) (quoting *Robertson v. Simpson*, 624 F.3d 781, 783 (6th Cir. 2010)). While the ineffective assistance of counsel may, in some situations, constitute extraordinary circumstances, *Keeling v. Warden*, 673 F.3d 452, 462 (6th Cir. 2012),[6] the plaintiff has not suggested that the ineffective assistance of counsel or any other circumstances beyond his control prevented timely filing.

[6] In *Keeling*, the court recognized that "[b]oth ineffective assistance of counsel and 'a substantial, involuntary delay in learning about the status of their appeals' may constitute extraordinary circumstances sufficient to warrant relief." *Keeling*, 673 F.3d at 462 (quoting *Robinson*, 424 F. App'x at 442). At the same time, however, the court held that, even in "the presence of such circumstances, the statute of limitations will only be tolled if the circumstances were both beyond the control of the litigant and unavoidable with reasonable diligence." *Id.* In that case, while appellate counsel was allegedly ineffective for failing to notify his client of the state appellate court's decision on direct appeal, the court found that the petitioner was not reasonably diligent in ascertaining the status of his appeal and was not entitled to equitable tolling. *Id.*

The court finds, in short, that Hutton has not established grounds for the equitable tolling of the limitations period. His Motion for Equitable Tolling (Doc. No. 1), therefore, will be denied, meaning that the court has no need to consider the merits of the claims in his Section 2255 Motion.

**B. The Section 2255 Motion**

Even if the court were to consider his claims on the merits, Hutton has not shown that his plea was not knowing and voluntary, that his counsel's conduct fell below a standard of reasonableness, or that he was prejudiced by any purported conduct by his counsel.

Hutton contends that his attorney was ineffective, first, in advising him to enter a Plea Agreement that "relinquished post-secondary sentence and conviction collateral challenges" and failed to "foresee revision to standards of law [a]ffecting same," thus making his waiver of post-conviction challenges "not knowingly and intelligently conceded." (Doc. No. 2 at 1–2.) More specifically, he appears to be claiming that his counsel should have but failed to predict changes in legal standards governing the ability of convicted felons to bear arms that might have benefited him. (*See id.* at 2.) In addition, he claims that counsel was ineffective for failing to conduct an adequate investigation of mitigating factors that "affected criminal history scoring" and resulted in "an unreasonable term of imprisonment." (*Id.* at 2; *see also id.* at 17.) He appears to be arguing that his plea was not knowing and voluntary, and counsel was ineffective, because his juvenile offenses should not have been included in his sentencing guidelines calculations, under which he was deemed a career offender. (*Id.* at 9–17.)[7]

[7] Hutton submitted a Declaration with his § 2255 Motion in which he attests that his attorney at the plea stage did not tell him (1) that, if he were "declared eligible for First Step Act Sentence reduction benefits," he could not challenge the incorrect calculation of such benefits by the Federal Bureau of Prisons; (2) that, if the sentencing commission adopted amendments to sentencing guidelines policy that had the effect of reducing his sentencing guidelines range, he would not be eligible to bring a collateral attack to his sentence; or (3) that he could not petition for a compassionate release sentence reduction or even for a sentence reduction if the sentencing guidelines were formulated erroneously. (Doc. No. 3, Hutton Decl. ¶¶ 8, 10–13.) It is unclear how

As the government succinctly summarizes these claims, Hutton alleges that (1) his attorney improperly advised him to waive certain appellate and collateral challenges in his Plea Agreement; (2) counsel failed to sufficiently investigate sentencing mitigation factors; and (3) counsel failed to foresee the possible effects of future Second Amendment jurisprudence on Hutton's conviction under 18 U.S.C. § 922(g)(1). (*See* Doc. No. 11 at 1.) The government concedes that, if they had been timely, Hutton's claims of ineffective assistance of counsel were not waived by his Plea Agreement. It argues that they are nonetheless without merit because Hutton cannot establish either that his attorney's conduct was constitutionally deficient or that he was prejudiced by any alleged deficiency. (Doc. No. 11 at 2, 13–19.)

As an initial matter, the record establishes that Hutton's decision to enter the Plea Agreement and his waiver of the right to bring a direct appeal to a collateral challenge to a sentence of 188 months were knowing and voluntary, and his allegations to the contrary, even assuming that his counsel did not discuss the matters with him, are not sufficient to establish entitlement to a hearing or to relief on this ground.

The law is clear that guilty pleas "not only must be voluntary but must be knowing, intelligent acts done with sufficient awareness of the relevant circumstances and likely consequences." *Brady v. United States*, 397 U.S. 742, 748 (1970). "The longstanding test for determining the validity of a guilty plea is 'whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.'" *Hill v. Lockhart*, 474 U.S. 52, 56 (1985) (quoting *North Carolina v. Alford*, 400 U.S. 25, 31 (1970)). "Where, as here, a

---

these attestations are relevant to his actual claims. Hutton has not shown that he is or might become eligible for a sentence reduction under the First Step Act, that he would otherwise be eligible for any sentencing guidelines amendments made retroactively applicable by the U.S. Sentencing Commission, or that would ever meet the age and sentence-length qualifications for seeking compassionate release under 18 U.S.C. § 3582(c)(1)(A).

defendant is represented by counsel during the plea process and enters his plea upon the advice of counsel, the voluntariness of the plea depends on whether counsel's advice 'was within the range of competence demanded of attorneys in criminal cases.'" *Id.* (quoting *McMann v. Richardson*, 397 U.S. 759, 771 (1970)). A defendant who pleads guilty upon the advice of counsel "may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel" was outside that range. *Id.* at 56–57. He must also establish prejudice, that is, that "counsel's constitutionally ineffective performance affected the outcome of the plea process." *Id.* at 59; *accord Lafler v. Cooper*, 566 U.S.156, 163 (2012).

"A defendant's statements on the record during a plea colloquy that he or she understands the nature and the consequences of the plea provide strong evidence that a plea was intelligent and knowing." *Boyd v. Yukins*, 99 F. App'x 699, 703 (6th Cir. 2004); *see also Blackledge v. Allison*, 431 U.S. 63, 74 (1977) ("Solemn declarations in open court" that a plea was voluntary, knowing, and intelligent "carry a strong presumption of verity.").

In this case, the relevant waiver provision in the Plea Agreement states, "[T]he Defendant knowingly waives the right to appeal any sentence that includes a term of 188 months of incarceration and 3 years of supervised release. . . . The Defendant also knowingly waives the right to challenge the sentence imposed in any motion pursuant to 18 U.S.C. § 3582(c) and in any collateral attack, including, but not limited to, a motion brought pursuant to 28 U.S.C. § 2255 and/or § 2241." (Plea Agreement, Crim. Doc. No. 63 at 13.) During the change of plea hearing, the court obtained verbal confirmation from Hutton that he had both read and understood the Petition to Enter a Plea of Guilty and the Plea Agreement. (Plea Hearing Transcript, Crim. Doc. No. 98 at 7.)

The court also insured that Hutton understood that he would be waiving certain rights to appeal in his Plea Agreement, including his "right to appeal whether or not [he was] guilty of the offenses [he was] pleading to" and his right to "appeal any sentence that includes the agreed-upon sentence." (*Id.* at 9–10.) The court also emphasized that the Plea Agreement also included a waiver of the "the right to challenge the sentence imposed in a motion or a collateral attack." (*Id.* at 10.) Hutton assured the court that he understood the rights he would be waiving if the court accepted the plea agreement, that his mind was clear and he "fe[lt] like [he] kn[e]w what [he was] doing, and that he had not been pressured—psychologically or physically—to plead guilty. (*Id.* at 10–11.) Hutton then signed the Plea Agreement in open court, which stated, in part, above his signature, that he fully understood "all rights with respect to the provisions of the Sentencing Guidelines that may apply," and that he "read this Plea Agreement and carefully reviewed every part of it with [his] attorney." (Crim. Doc. No. 63 at 12.) These confirmations establish that Hutton's waiver was knowing and voluntary and that he had actual knowledge of the rights he was waiving, even if his counsel failed to notify him of the full effect of the waiver.

Moreover, Hutton cannot establish prejudice. As set forth above, to demonstrate prejudice following a guilty plea, "a petitioner must demonstrate 'a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial,'" or, at a minimum, that he had "a reasonable probability of 'a more favorable plea.'" *Kimbrough v. United States*, 71 F.4th 468, 473 (6th Cir. 2023) (first quoting *Hill*, 474 U.S. at 59; then quoting *Gilbert*, 64 F.4th at 771). The court considering such a claim must "engage[] in an 'objective' rather than a 'subjective' inquiry, one that requires the petitioner to demonstrate that 'reject[ing] the plea bargain would have been rational under the circumstances.'" *Id.* (quoting *Pilla v. United States*, 668 F.3d 368, 373 (6th Cir. 2012)). Here, Hutton does not claim that he would have insisted

on going to trial but for counsel's errors. Moreover, the sentencing guidelines provided a sentencing range of 262–327 months of imprisonment, but Hutton, despite being categorized as a career offender, received a sentence of 188 months. And, as discussed below, Hutton cannot show that an ability to bring a collateral challenge to his sentence to raise any of the issues he claims counsel should have advised him about would have resulted in a further reduced sentence or that rejecting this Plea Agreement would have been rational under the circumstances.

First, regarding counsel's purported failure to predict the evolution of Second Amendment jurisprudence, the cases Hutton cites do not actually establish that he would have been afforded relief. Notably, new constitutional rules of criminal procedure are generally *not* applicable to cases that "have become final before the new rules are announced." *Welch v. United States*, 578 U.S. 120, 128 (2016) (citation omitted). Instead, courts may only give retroactive effect to "[n]ew *substantive* rules" of constitutional law or to "new watershed rules of criminal procedure." *Id.* (internal quotation marks and citations omitted). Thus, in this case, only a Supreme Court decision that § 922(g)(1) violates the Second Amendment, or is unconstitutional as applied to facts like those in his case, would serve as a potential basis for a retroactive collateral challenge to Hutton's § 922(g)(1) conviction. Prior to any such holding, Hutton cannot argue that failure to predict a nonexistent change to the constitutionality of § 922(g)(1) constitutes deficient performance or that he was prejudiced by any such failure.

And the cases Hutton cites do not establish a Supreme Court case establishing a new substantive rule of constitutional law that would be retroactively applicable on collateral review. The Southern District of Mississippi decision Hutton cites was later reversed by the Fifth Circuit, which held that the "district court erred when it held that § 922(g)(1) violates the Second Amendment as applied" to the defendant in that case. *United States v. Bullock*, 123 F.4th 183, 185

(5th Cir. 2024), *cert. denied*, 146 S. Ct. 255 (2025). In *New York State Rifle*, the Supreme Court considered a constitutional challenge to New York laws pertaining to ordinary, law-abiding citizens' applications for unrestricted license to carry concealed weapons in public. *New York State Rifle*, 597 U.S. at 11, 71. The Court did not remotely address the issue of whether restrictions on the ability of specific categories of convicted felons to carry firearms violate the Second Amendment. And the Third Circuit case cited by Hutton was vacated by the Supreme Court. *Range v. Att'y Gen. United States of Am.*, 69 F.4th 96, 98 (3d Cir. 2023), *cert. granted, judgment vacated sub nom. Garland v. Range*, 144 S. Ct. 2706 (2024).

On remand, the Third Circuit held that, on the particular facts before it, "the principles underlying the Nation's historical tradition of firearms regulation" did not support depriving the plaintiff of his "Second Amendment right to possess a firearm" in the future. *Range v. Att'y Gen. United States*, 124 F.4th 218, 232 (3d Cir. 2024). There, however, the underlying felony conviction was for food stamp fraud committed more than twenty years previously, and there was no evidence in the record that the plaintiff "pose[d] a physical danger to others." *Id.* The court emphasized that its holding was "narrow." *Id.*

After Hutton's sentencing, the Sixth Circuit has also recognized that convictions under § 922(g)(1) may in certain situations be vulnerable to an as-applied challenge. *United States v. Williams*, 113 F.4th 637, 657 (6th Cir. 2024). The court also held, however, that a

> person convicted of a crime is "dangerous," and can thus be disarmed, if he has committed (1) a crime "against the body of another human being," including (but not limited to) murder, rape, assault, and robbery, or (2) a crime that inherently poses a significant threat of danger, including (but not limited to) drug trafficking and burglary. An individual in either of those categories will have a very difficult time, to say the least, of showing he is not dangerous.

*Id.* at 663. This case does not suggest that, even if Hutton could bring a collateral Second Amendment-based challenge to his sentence, he actually has a viable basis for challenging his

§ 922(g) conviction, as he possessed the gun in furtherance of drug trafficking. In sum, there has been no new substantive rule of constitutional law recognized by the Supreme Court (or the Sixth Circuit) that would provide Hutton a viable collateral claim, even if he had not waived the ability to bring such collateral challenges.

Even if there were, Hutton has not shown how his counsel's alleged failure to anticipate the possibility of a new rule of constitutional law made retroactively available was constitutionally deficient. Nor can he show that he was prejudiced by that purported failure. In Hutton's case, rejecting a very favorable plea deal based on the remote possibility that the Supreme Court or the Sixth Circuit might invalidate § 922(g) would not have been rational under the circumstances.

Regarding counsel's failure to investigate mitigating factors that, Hutton claims, would have resulted in a reduced sentencing range, Hutton presents no evidence to support that assertion—for instance by pointing to any relevant background information that was omitted from the Presentence Report compiled by the Probation Office or that, if defense counsel had properly brought additional information to the court's or the government's attention, a lower sentencing range, and therefore a lower agreed-upon sentence, would have been warranted. At the sentencing hearing, the court expressly took note of Hutton's youth at the time of two of the prior felony offenses and other mitigating factors. These factors, indeed, formed part of the basis for the court's decision to accept the Plea Agreement. Hutton has not shown that, but for counsel's purported errors, he would have received a more favorable plea deal; nor does he maintain (rationally or otherwise) that, but for counsel's errors he would not have pleaded guilty.

## V. CERTIFICATE OF APPEALABILITY

Under Rule 11 of the Rules Governing Section 2255 Proceedings, "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." A

certificate may issue only if a movant "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The Supreme Court has explained that, when the district court rejects a movant's constitutional claims on the merits, the movant "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (addressing issuance of a certificate of appealability in the context of a habeas petition filed under 28 U.S.C. § 2254).

In this case, reasonable jurists would not debate the conclusion that equitable tolling is not warranted or that, regardless, Hutton is not entitled to relief under § 2255. The issues he presents are *not* "adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). Accordingly, the court will not issue a certificate of appealability.

## VI. CONCLUSION

The court finds that Hutton has not established that an evidentiary hearing is required. Nor has he shown that equitable tolling applies to bring his Section 2255 Motion within the one-year statute of limitations. Even if his motion were timely, Hutton has not shown that his plea was not knowing and voluntary, that his attorney's performance was constitutionally deficient, or that he was in any way prejudiced by his attorney's purported errors. The court will a deny Hutton's motions and dismiss this case, without a hearing and without issuing a certificate of appealability.

An appropriate Order is filed herewith.

ALETA A. TRAUGER
United States District Judge